IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CR. No. C-08-383 |
| | § | C.A. No. C-09-289 |
| WILLIAM GENE NEWKIRK, | § | |
|     Defendant/Movant. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE,
ORDER SETTING CASE FOR RESENTENCING
AND ORDER APPOINTING COUNSEL**

Pending before the Court is Movant William Gene Newkirk's ("Newkirk") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (D.E. 44.)[1] The Court ordered the government to respond (D.E. 45), and the government filed a response in opposition. (D.E. 51.) Newkirk filed a reply on January 29, 2010 (D.E. 52), which the Court has also considered. Additionally, on May 10, 2010, Newkirk submitted a letter motion to the Court inquiring as to the status of his § 2255 motion. (D.E. 53.) Obviously, this Order provides an update on his motion's status and renders his request for status moot. To the extent that letter motion can be construed as asking for any additional relief (D.E. 53), it is DENIED.

For the reasons set forth herein, the Court GRANTS IN PART and DENIES IN PART Newkirk's § 2255 motion. Because the Court finds that his counsel was ineffective for failing to object to a three-level increase for reckless endangerment, which should have only been a two-level

---

[1] Docket entry references are to the criminal case, Cr. C-08-383.

1

increase, the Court sets the case for resentencing. As to his claim that counsel should have objected to his criminal history, that claim is DENIED.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II.  FACTS AND PROCEEDINGS

**A.     Summary of the Offense**

On May 13, 2008, Newkirk drove a Kenworth Tractor with a vehicle hauling trailer into the Falfurrias, Texas U.S. Border Patrol checkpoint. The trailer was loaded with two vans on the top racks. When questioned by an agent, the defendant advised he was a U.S. citizen and asked the agent how his day was. When asked if he had anyone with him, the defendant stated there was no one with him in the tractor. While an agent questioned Newkirk, another agent, utilizing a canine conducted a "non-intrusive, free-air sniff" of the exterior of the tractor. The questioning agent completed his immigration inspection and released the defendant to continue on his trip. After he had left the checkpoint, however, the canine handler advised that the canine had alerted to the tractor. A Border Patrol supervisor and a second agent along with a canine departed the checkpoint and conducted a traffic stop on the defendant approximately five miles north of the checkpoint.

Newkirk consented to a search of the vehicle, which revealed a 19-year old female, and a 29-year old female with her 4-year old daughter. All three were determined to be Mexican citizens illegally present in the United States. A search of the two vans on top of the trailer revealed fifteen additional individuals in each van. All thirty of the van occupants were interviewed and found to be illegally present in the United States. According to Border Patrol agents and a DPS officer, the

positioning of the vans on the top rack of the trailer pulled at highway speeds, combined with no vehicles on the lower racks, appeared unstable.

Newkirk advised he brought a load of vehicles to McAllen, Texas for auction, and that afer unloading the vehicles, he was approached by a man who asked him if he would transport two vans back to San Antonio. The vans were loaded onto the trailer by two drivers that he did not see. After the vans were loaded, the defendant drove off. He denied any knowledge of the illegal aliens in the vans or inside the tractor cab. He declined to provide any further information and refused to provide a sworn statement.

A search of Newkirk revealed he had $1,678 on his person. A search of the tractor revealed an additional $12,000 inside of an envelope under the passenger seat.

Two of the aliens provided affidavits, which were summarized in the PSR. One of the occupants in the tractor advised that she had paid money to be smuggled into the United States. She had spent one day in Reynosa until being picked up by a smuggler and taken to the Rio Grande River where she waded across into the United States. She was taken to a house where she spent nine days. On May 13, 2008, she was taken to a truck stop where she was directed by an unknown person to get into the cab of the truck which was driven by Newkirk. After several hours, she was arrested.

One of the occupants of one of the vans also advised that he had been paid to be smuggled into the United States. He had crossed the Rio Grande River on May 12, 2008 by inflatable raft, with about 70 other illegal aliens. He was thereafter taken to a mobile home until approximately 5 p.m. when he and 14 others were directed to get into a van. The van drove for approximately 30 minutes before it stopped. The driver got out and he later heard the van being moved onto the

trailer.  This occupant further advised that Newkirk was the person who tied down the van to the trailer.

**B.     Criminal Proceedings**

On June 11, 2008, Newkirk was charged in a two-count indictment with two counts of transporting an illegal alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1326(a)(1)(B)(ii). (D.E. 21.)  He pleaded guilty to Count One on July 28, 2008, pursuant to a written plea agreement whereby the government would recommend that he be given maximum credit for acceptance of responsibility, recommend that he be sentenced within the applicable guideline range, and move for the dismissal of the remaining count at sentencing.  (D.E. 29; Minute Entry Dated July 28, 2008.) At the conclusion of the rearraignment, the Court ordered that a Presentence Investigation Report ("PSR") be prepared. (D.E. 30.)

The PSR calculated Newkirk's base offense level as a 12.  (PSR at ¶ 17.)  It then added 6 levels pursuant to U.S.S.G. § 2L1.2(b)(2)(B) based on the number of aliens involved in the offense (33) and an additional three levels pursuant to U.S.S.G. § 2L1.1(b)(6),[2] because the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.  This increase was based on the fact that 30 of the transported aliens were laying on the floor inside the two vans which were positioned on the top racks of the vehicle hauler and that this positioning appeared unstable.  (PSR at ¶¶ 18-19.)  After a three-level credit for acceptance of responsibility, the PSR calculated his total offense level as an 18.  (PSR at ¶¶ 20-27.)  When coupled with his criminal history category of I, Newkirk's advisory guideline range was 27 to 33 months. (PSR at ¶¶ 29-30, 48.)  Newkirk did not file any written objections to the PSR.  (D.E. 34.)

---

[2] As discussed in more detail <u>infra</u>, the enhancement under U.S.S.G. § 2L1.1(b)(6) should have only resulted in a two-level increase under the plain language of that guideline provision.

At sentencing, held on October 23, 2008, Newkirk's counsel did not raise any objections to the PSR. (D.E. 48, Sentencing Transcript ("S. Tr.") at 3.) Counsel made a plea for the Court to impose a non-guidelines sentence below the advisory guideline range. (S. Tr. at 3-5.) The United States recommended a sentence of 30 months, within the applicable guideline range. (S. Tr. at 6-7.) In support of that request, the United States pointed to a prior arrest, from March 2006, when Newkirk was stopped driving his truck near George West, Texas and there were two Dodge Caravans loaded on the top of the automobile hauler. Six adult illegal aliens were found in one van and five in the other, and two fourteen-year-old illegal aliens were discovered inside the tractor cab. (PSR at ¶ 31; S. Tr. at 6-7.)

The Court sentenced Newkirk to 27 months in the Bureau of Prisons, to be followed by three years of supervised release. (S. Tr. at 9.) The Court also imposed a $100 special assessment, but declined to impose a fine. (S. Tr. at 9; D.E. 37.) Judgment in his criminal case was entered on October 29, 2008. (D.E. 37.)

Newkirk did not appeal. His § 2255 motion (D.E. 44) was received by the Clerk on October 26, 2009. It is timely.

### III. MOVANT'S ALLEGATIONS

Newkirk's motion contains two grounds for relief, both of which are ineffective assistance of counsel claims. First, Newkirk argues that his counsel was constitutionally ineffective because he failed to challenge at sentencing the one criminal history point the PSR assessed for Newkirk's prior misdemeanor conviction of assault. (D.E. 44 at 6; see also PSR at ¶ 29 (describing the offense and imposing a single point pursuant to U.S.S.G. § 4A1.1(c)).) The only explanation he offers in

5

support is that the assault should not have been scored because it "had or has nothing to do with the current conviction." (D.E. 44 at 6.)

Second, he argues that his sentencing counsel was ineffective for failing to object to the three-level increase to his offense level based on a finding that the offense involved substantial risk of death or serious bodily injury, pursuant to U.S.S.G. § 2L1.1(b)(6). (D.E. 44 at 4-5.) Newkirk contends that this enhancement should not have applied because the aliens in the vehicles were "not endangered in anyway whatsoever" and instead "were very secured on the trailer." (D.E. 44 at 4.) He further contends that the agents involved obviously thought that there was "no danger because they moved the transporting rig several mil [sic] without moving the vehicles or the aliens from the transport vehicle." (D.E. 44 at 4-5.)

As discussed herein, because he contends his counsel should have objected to the three-level increase under U.S.S.G. § 2L1.1(b)(6), the Court also construes his motion as including a claim that counsel should have objected to the three-level enhancement as improper, because the guideline only provided for a two-level increase.[3] As to this claim, Newkirk is entitled to relief.

## IV. DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's

---

[3] Although the United States contends that Newkirk does not complain of this error, *pro se* pleadings are to be construed liberally. See United States v. Riascos, 76 F.3d 93, 94 (5th Cir. 1996). Newkirk complains that counsel should have objected to the three-level enhancement. Although he argues an objection should have been made on different grounds, Newkirk is not an attorney and cannot be expected to know every possible basis for a legal objection to the PSR's determination of the guideline range. Particularly because the error is clear and affects Newkirk's advisory guideline range, the Court will construe Newkirk's ineffective assistance of counsel claim as raising this ground for relief.

jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982).

**B.     Ineffective Assistance of Counsel**

**1.     General Standards**

Newkirk's grounds for relief both allege ineffective assistance of counsel. Such claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one of the two prongs, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d

452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Newkirk's claims both focus on counsel's alleged ineffectiveness at his sentencing. To establish prejudice as a result of an alleged error by counsel *at sentencing*, a § 2255 movant must show that there is a reasonable probability that, but for counsel's alleged error, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004).

### 2. Counsel's Alleged Failure to Challenge Scoring of Misdemeanor Conviction

Newkirk's first claim is that his counsel should have objected to the scoring of his misdemeanor conviction because it was not related to the instant offense. (D.E. 44 at 6.) That would not have been a proper objection. Criminal history points are assessed for past convictions and do not require any relation to the offense for which a defendant is being sentenced. The Court has reviewed the PSR carefully, and finds that the misdemeanor offense was properly scored. Thus, Newkirk cannot show either deficiency or prejudice as to this claim. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

In any event, the single criminal history point did not affect Newkirk's criminal history category, which was a I with or without the single point. Thus, the scoring of this conviction did not affect his advisory guideline range and he cannot show prejudice. For all of these reasons, this claim of ineffective assistance of counsel is DENIED.

### 3. Counsel's Alleged Failure to Challenge Reckless Endangerment Enhancement

As referenced <u>supra</u> at note 3, the Court's review of Newkirk's claims, the United States' response and the record in this case reflect that Newkirk was assessed a three-level increase for reckless endangerment, when the applicable guideline provision calls for only a two-level increase in his case. U.S.S.G. § 2L1.1(b)(6). The United States notes this error only in a footnote in its response, and merely to point out that it "appears" he was assessed a three level adjustment instead of a two level adjustment, but states that this was "not complained of by Newkirk." (D.E. 51 at 8 n.6.) Nonetheless, for the reasons set forth <u>supra</u> at note 3, the Court construes Newkirk's claim as alleging that counsel was ineffective for failing to object to this error.

The three-level adjustment was a clear error that counsel could have discovered merely by carefully comparing the applicable guideline provision to the PSR. That is a key function of defense counsel at sentencing, and counsel failed to object on that ground. The Court concludes that counsel's failure to object was objectively unreasonable. There was no possible strategic reason ***not*** to make such an objection. Indeed, there would have been no reasonable basis for the United States to oppose such an objection, and the Court certainly would have sustained it. Accordingly, the Court concludes that Newkirk has established his counsel was deficient.

Newkirk has also established prejudice. That is, had counsel objected to the three-level enhancement on the grounds that it should have only been a two-level increase, Newkirk's total offense level would have been 17, instead of 18, and his advisory guideline range would have been 24 to 30 months, instead of 27 to 33 months. Especially in light of the fact that the Court imposed a sentence at the low end of the applicable guideline range, Newkirk has shown a "reasonable probability" that he would have received a lesser sentence, absent counsel's error. <u>Cf.</u> <u>Grammas</u>,

9

376 F.3d at 438-39. Accordingly, on this sole claim, the Court finds that counsel was constitutionally ineffective and that Newkirk is entitled to resentencing.

The Court has also considered Newkirk's claim that counsel was ineffective for failing to challenge the reckless endangerment enhancement on the grounds that the aliens were not in any danger. The Fifth Circuit has provided a non-exhaustive list of five factors for the sentencing court to consider when determining whether the § 2L1.1(b)(6) adjustment applies: "the availability of oxygen, exposure to temperature extremes, the aliens' ability to communicate with the driver of the vehicle, their ability to exit the vehicle quickly, and the danger to them if an accident occurs." United States v. Zuniga-Amezquita, 468 F.3d 886, 889 (5th Cir. 2006).

In his reply to the United States' response, Newkirk offers his own sworn testimony regarding the condition in which the aliens were transported. Specifically, he claims that it is normal procedure to load top vehicles first on a vehicle hauler and that it is "the design of the hauler to haul" and not "unstable" to haul vans in that way, especially because the vans were not raised to maximum height. He further contends that the aliens had contact with him via cell phone and "access to climate control through windows or by starting the van and applying the air conditioning or heat. The horn could also be used to alert the driver if needed." (D.E. 52 at 2-3.) Because counsel did not file any objection to the enhancement, none of that information was before the Court at sentencing.

The Court believes it likely that it would have applied the reckless endangerment enhancement even if counsel had objected on the grounds Newkirk now suggests. Nonetheless, in view of the Court's decision to resentence Newkirk based on counsel's failure to object to the

erroneous three-point increase, it will also hear argument or evidence at resentencing regarding the applicability of the enhancement in its entirety.

## V.  CONCLUSION

For the above-stated reasons, Newkirk's motion under 28 U.S.C. § 2255 (D.E. 44) is GRANTED IN PART and DENIED IN PART.  This case is set for resentencing at 5:00 p.m. on August 17, 2010 at 5:00 p.m.  Additionally, the Office of the Federal Public Defender is hereby appointed to represent Newkirk at the resentencing.

It is so ORDERED this 27th day of July, 2010.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE